IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| JOE FRANK HORACE, SR. | § | |
| VS. | § | CIVIL ACTION NO. 1:10cv419 |
| DIRECTOR, TDCJ-CID | § | |

## MEMORANDUM OPINION

Petitioner Joe Frank Horace, Sr., an inmate confined in the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se,* filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## Factual Background

In 2007, following a jury trial, petitioner was convicted of burglary of a habitation in the Criminal District Court of Jefferson County, Texas. After petitioner entered a plea of true to the allegation that he had a prior conviction, the jury sentenced petitioner to 88 years imprisonment. The conviction was affirmed by the Texas Court of Appeals for the Ninth District. *Horace v. State*, No. 09-08-54-CR. The Texas Court of Criminal Appeals refused a petition for discretionary review.

Petitioner subsequently filed a state application for writ of habeas corpus. The Court of Criminal Appeals denied the application without written order on the findings of the trial court without a hearing. *Ex parte Horace*, Appl. No. 33,742-02.

## Grounds for Review

Petitioner asserts the following grounds for review: (1) he was denied the right to confrontation; (2) there was insufficient

evidence to support the conviction; (3) he was received ineffective assistance of counsel at trial because: (a) counsel failed to consult with him prior to trial and (b) failed to attempt to have Exhibit 1-A admitted into evidence in its entirety and (4) he received ineffective assistance of counsel on appeal because counsel failed to raise the prior ground for review on appeal.

## Evidence at Trial

In its opinion, the intermediate appellate court described the evidence introduced at trial as follows:

> Beaumont Police Department Officer Edward Cormier, Sr., responded to a burglary-in-progress call and was dispatched to Vera Johnson's residence in Jefferson County on August 13, 2005. When he arrived at the scene, Johnson, an elderly woman, had already been untied by neighbors. She gave Cormier a description of the burglar and her missing vehicle, a four-door maroon 1980 Pontiac Phoenix. She also informed Cormier that a shotgun was missing from her home.
>
> Officer Clint Weir with the Beaumont Police Department also responded to the call and arrived at the scene after Cormier. Weir obtained the vehicle identification number of Johnson's vehicle. He followed Johnson to the hospital where she gave him a description of the burglar.
>
> Patrick Murphy, a forensic nurse examiner, testified that she examined Johnson after the incident and that her injuries were caused by blunt force trauma.
>
> On August 13th, one of Johnson's neighbors, Terrence Eaglin, who lived in the neighborhood with his grandmother, saw a suspicious man walking up and down the street on which Eaglin and Johnson lived. At trial, Eaglin identified Horace as the suspicious man he had seen walking up and down the street. Although they had never been introduced, Eaglin recognized Horace as someone who "used to live in the neighborhood" and someone he saw "every now and then" in the neighborhood. Around "noontime," Horace approached Eaglin and asked him for money. Eaglin did not give him any money.
>
> Around six o'clock that evening, Eaglin saw Johnson's maroon car traveling fast in a direction Johnson normally

did not travel.  Eaglin became concerned because after years of living in Johnson's neighborhood, he had never known her to leave her house in the evening or to drive fast.

Eaglin testified he and his friend, Jeremy Keil, went to Johnson's house.  Eaglin observed the garage door and the back door were "busted wide open," and found Johnson restrained and gagged in her living room.  She had been beaten and was in shock.  Keil called 9-1-1 and the police subsequently arrived.  Eaglin later gave a statement at the police department.  He identified Horace in a line-up as the man that he had seen walking down the street who approached him on the day of the incident.

Sabil Washington, Eaglin's grandmother, also came to Johnson's aid when she heard Johnson's vehicle had been stolen.  Earlier that day, Washington had gone to the store and returned.  She did not notice any damage to Johnson's garage door and if it had been damaged, Washington would have noticed.  She did not see who drove Johnson's vehicle away from the scene.  Washington identified Horace as someone she had seen months before visiting former neighbors on her street.

Eugene Harmon, Jr., testified that around eight or nine o'clock on August 13th, Horace came to Harmon's residence.  Harmon was surprised to see Horace; he had not seen Horace in "about 15 years."  Harmon stepped outside to speak with Horace and did not see a vehicle in his driveway.  Horace left and came back five or ten minutes later in a maroon vehicle that Harmon had never seen him in before.  Horace said he and his girlfriend's dad had argued.  Horace asked Harmon if he could "stay over."  He told Harmon he had just bought the vehicle.  Harmon said he could sleep in the vehicle in the driveway.  That night and the next morning, Horace continued to sleep in the vehicle and he later asked for some water.  The day after Horace spent the night in Harmon's driveway, the police arrived.

While on duty the day after he responded to the call at Johnson's residence, Officer Weir located Johnson's vehicle parked in a driveway.  Weir approached the vehicle and saw a man matching Johnson's description sleeping in the backseat of the vehicle.  At trial, Weir identified Horace as the man he found sleeping in the vehicle.  Horace refused to get out of the vehicle, and after a struggle with the police he was removed from the vehicle and arrested for the unauthorized use of a motor vehicle.  Weir made sure there were no weapons in the vehicle, and at trial stated he did not know if the keys to the vehicle were ever found.

Johnson died of cancer prior to trial. Her daughter, Carroll Ann Smith, testified that Johnson would only leave the house in her car to go to church, the store, or the doctor, and did not go out at night. She stated Johnson never mentioned Horace, did not allow anyone else to drive her car, and always parked the car in the garage. In the days after the incident, Smith went to Johnson's house and noticed the television and one set of her car keys were missing.

## Standard of Review

Consideration of a habeas petition filed in federal court is limited to the highly deferential review standard afford to state court adjudications under the Antiterrorism and Effective Death Penalty Act ("AEDPA). 28 U.S.C. § 2254. *See Hearn v. Thaler*, 669 F.3d 265, 271 (5th Cir. 2012) ("AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." (internal quotation marks and citation omitted)). Under AEDPA, a federal court may not grant habeas relief on a claim that was adjudicated on the merits by a state court unless the state court decision: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the fats in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1). "Clearly established Federal law" refers to holdings of the Supreme Court at the time of the state court's decision. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000). Factual findings by the state court "are presumed to be correct, and a petitioner has the burden of rebutting this presumption with clear and convincing evidence."

4

*Brown v. Dretke*, 419 F.3d 365, 371 (5th Cir. 2005).

A state court decision involves an unreasonable application of federal law if it "correctly identifies the governing legal rules but applies it unreasonably to the facts of a particular prisoner's case." *Fields v. Thaler*, 588 F.3d 270, 273 (5th Cir. 2009) (quoting *Williams*, 529 U.S. at 407-08). In evaluating whether a state court's application of a rule was unreasonable, the specificity of the rule must be considered. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id*. An unreasonable application of law differs from an incorrect application; thus, a federal habeas court may correct what it finds to be an incorrect application of law only if this application is also objectively unreasonable. *See Williams*, 529 U.S. at 409-11. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (citation omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonale." *Id*. The Supreme court has noted that this standard is difficult to meet ... because it was meant to be." *Id*.

### Analysis

*Confrontation*

Petitioner asserts he was denied the right to confront the victim in this matter because she died before trial. He also

5

asserts he was denied the right of confrontation when Officer Weir testified that petitioner matched the description given by the victim.

The Confrontation Clause of the Sixth Amendment to the Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." In *Crawford v. Washington*, 541 U.S. 36 (2005), the Supreme Court revised its prior Confrontation Clause jurisprudence and held that "[t]estimonial statements of witnesses absent from trial" are generally admissible "only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine [the witness]." 541 U.S. at 59.

The threshold question in a Confrontation Clause analysis is whether a statement was testimonial or non-testimonial. *See Crawford*, 541 U.S. at 59. A testimonial statement "is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact" and includes "statements that were made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id*. at 51-52. Testimonial statements are those "procured with a primary purpose of creating an out-of-court substitute for trial testimony." *Michigan v. Bryant*, 131 S.Ct. 1143, 1155 (2011). In *Davis v. Washington*, 547 U.S. 813, 822 (2006), the Supreme Court stated:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.

6

> They are testimonial when the circumstances objectively in-
> dicate that there is no such ongoing emergency, and that
> the primary purpose of the interrogation is to establish
> or prove past events potentially relevant to a later
> criminal prosecution.

Two statements from the victim were referred to at trial. The victim gave Officer Cormier a description of the burglar after she had been untied by neighbors. Officer Cormier testified to this at trial. At the hospital, the victim provided a description to Officer Weir. Officer Weir testified to this at trial and stated petitioner matched the description given by the victim.

The court is of the opinion that the victim's descriptions of the burglar were nontestimonial in nature and, as a result, their admission did not violate the Confrontation Clause. The descriptions were not given in a solemn setting or in an official manner and were not primarily designed to produce a statement that could be later used at trial. Instead, the statements were primarily designed to permit the police to meet the ongoing emergency of attempting to identify and apprehend a burglar. As a result, it cannot be concluded that the rejection of this ground for review by the state courts was either contrary to, or the result of an unreasonable application of, clearly established federal law.

*Insufficient Evidence*

Petitioner asserts there was insufficient evidence to support his conviction. Petitioner states there was no evidence that he was on the victim's property.

In determining whether there was sufficient evidence to

7

support a conviction, a court must decide whether, when viewing all of the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In conducting such review, a federal habeas court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the verdict. *See Weeks v. Scott*, 55 F.3d 1050, 1061 (5th Cir. 1995). Where, as here, a state appellate court has reviewed the sufficiency of the evidence to support the conviction, the state court's determination is entitled to great weight in federal habeas review. *Porretto v. Stalder*, 834 F.2d 461, 467 (5th Cir. 1987).

Under Section 30.02(a)(3) of the Texas Penal Code, a person commits burglary of a habitation if, without the consent of the owner, the person enters the habitation and commits, or attempts to commit, a felony, theft, or assault. Petitioner asserted this ground for review on appeal. In considering this ground for review, the intermediate appellate court said that under Texas law, when there is independent evidence of a burglary, the defendant's unexplained personal possession of the recently stolen property in a burglary may permit an inference that the defendant is the one who committed the burglary. The court then stated:

> There is no dispute that Johnson's residence was burglarized. Eaglin testified he had seen Horace walking up and down Johnson's street the day of the burglary. Eaglin stated Horace appeared suspicious that day and asked him for money. Later that evening, he saw Horace driving Johnson's vehicle fast down the street. The garage

8

> and back doors had been "busted wide open" and one set of Johnson's keys was missing.
>
> On the evening of the burglary, Harmon allowed Horace to sleep in a maroon vehicle in his driveway. Once Horace arrived at his house in the vehicle, he did not leave Harmon's property until police found Horace sleeping in Johnson's vehicle and took him into custody. Weir testified the man he found sleeping in Johnson's car matched Johnson's description of the burglar.
>
> Viewing the record in the light most favorable to the verdict, a rational jury could have concluded beyond a reasonable doubt that Horace burglarized Johnson's residence. The jury could draw rational inferences from the testimony. As the trier of fact, the jury was free to determine the weight given the testimony of each of the witnesses and [petitioner's] possession of Johnson's vehicle. The evidence is ... sufficient to support the verdict.

Under Texas law there was sufficient evidence to permit a rational finder of fact to conclude beyond a reasonable doubt that petitioner committed each element of the offense of burlgary of a habitation. While the evidence was such as to also permit a conclusion that petitioner was not guilty, the standard in this proceeding is not whether the jury came to the correct conclusion based on the evidence before it, but whether there was evidence to permit a rational jury to return a finding of guilty. That standard is satisfied in this case.

*Ineffective Assistance of Counsel*

A. <u>Legal Standard</u>

A claim of ineffective assistance of counsel is reviewed under the standards announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). "First, a defendant must demonstrate that 'counsel's representation fell below an objective standard of reasonableness,' with reasonableness being judged under

9

professional norms prevailing at the time counsel rendered assistance." *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992) (quoting *Strickland*, 466 U.S. at 688). Second, if counsel was ineffective, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A claim of ineffective assistance of counsel will only merit habeas relief when a petitioner satisfies both prongs of the *Strickland* test. *See Strickland*, 466 U.S. at 687-97.

B. Application

1. At Trial

Petitioner states counsel was ineffective for not consulting with him during the entire pretrial period. He states that if counsel had spoken with him, he could have told counsel that his DNA did not match the DNA found in the rape kit of the victim. He also states counsel was ineffective for failing to attempt to have Exhibit 1-A admitted into evidence in its entirety.

In connection with petitioner's state habeas proceeding, trial counsel submitted an affidavit which provides, in part, as follows:

> I filed the necessary pretrial motions to obtain discovery from the State. During my representation, I met with Mr. Horace in jail to discuss his case. We talked about the evidence the State was going to present at trial. Further, we talked about possible witnesses and evidence that could be presented as a defense to benefit Mr. Horace. This writer advised Mr. Horace as to the punishment range for his offense and plea offers made by the State before trial.

10

Also in connection with the state habeas proceeding, the trial court found that "the facts asserted in [trial counsel's] affidavit, together with the contents of the official court records, demonstrate that the totality of the representation afforded [petitioner] was sufficient to protect his right to reasonably effective assistance of counsel." As stated above, the Court of Criminal Appeals based its denial of petitioner's state application for writ of habeas corpus on the findings of the state trial court.

Based on the record presented to it, it cannot be concluded that the state court's finding was an unreasonable conclusion of the facts. As a result, it cannot be concluded counsel failed to meet with petitioner at any time during the pretrial period. Even if such a conclusion could be made, petitioner has also failed to demonstrate prejudice. While petitioner states he could have told his counsel that his DNA did not match the DNA in the victim's rape kit, petitioner has submitted no evidence in support of his conclusion or any evidence that any scientific tests have been performed comparing his DNA to that found in the rape kit. In essence, petitioner has failed to provide any evidence in support of his contention other than his bald assertion. Moreover, no DNA evidence was introduced at trial. As a result, it cannot be concluded that the state court's rejection of this ground for review was either contrary to, or based on an unreasonable application of, clearly established federal law.

Petitioner also asserts counsel was ineffective for not

11

attempting to have Exhibit 1-A admitted into evidence in its entirety. Exhibit 1-A was a redacted copy of the victims's hospital records. However, petitioner has failed to state what evidence was contained in the unredacted version of the exhibit or attempt to explain how the evidence in the unredacted version would have assisted his defense. As a result, it cannot be concluded trial counsel's failure to attempt to have an unredacted version of Exhibit 1-A admitted into evidence fell below an objective standard of reasonableness or caused petitioner to suffer prejudice.

2. On Apppeal

Petitioner asserts he was denied effective assistance of counsel because appellate counsel failed to assert that trial counsel was ineffective for the reasons set forth above. However, as stated above, petitioner has failed to establish he received ineffective assistance of counsel at trial. As a result, appellate counsel's failure to raise this point on appeal did not fall below an objective standard of reasonableness and did not cause petitioner to suffer prejudice.

## Conclusion

For the reasons set forth above, this petition for writ of habeas corpus is without merit and will be denied. An appropriate final judgment shall be entered.

In addition, the court is of the opinion petitioner is not entitled to a certificate of appealability. An appeal from a judgment denying federal habeas relief may not proceed unless a certificate of appealability is issued. *See* 28 U.S.C. § 2253. The

standard for a certificate of appealability requires the petitioner to make a substantial showing of the denial of a federal constitutional right. *See Slack v. McDaniel*, 529 U.S. 473 (2000); *Elizalde v. Dretke*, 362 F.3d 323 (5th Cir. 2004). To make a substantial showing, the petitioner need not establish that he would prevail on the merits. Rather, he must demonstrate that the issues raised are subject to debate among jurists of reason, that a court could resolve the issues in a different manner, or that the questions presented are worthy of encouragement to proceed further. *See Slack*, 529 U.S. at 483-84. Any doubts regarding whether to grant a certificate of appealability should be resolved in favor of the petitioner. *See Miller v. Johnson*, 200 F.3d 272 (5th Cir. 2000).

In this case, petitioner has not shown that any of the issues he raised are subject to debate among jurists of reason. The factual and legal issues asserted by petitioner are not novel and have been consistently resolved adversely to his position. In addition, the issues raised are not worthy of encouragement to proceed further. As a result, a certificate of appealability shall not issue in this matter.

**SIGNED** this the 4 day of **September, 2013.**

_____
Thad Heartfield
United States District Judge